## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

Sheila Gluesing, individually and on behalf of all others similarly situated,

       Plaintiffs,

vs.

PrudentRx LLC & Caremark Rx, L.L.C.,

       Defendants.

Case No.: 1:24-cv-549-JJM-LDA

**REDACTED**

## DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS THE COMPLAINT

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ............................................................................................... iii

MEMORANDUM OF LAW ..................................................................................................1

BACKGROUND ...................................................................................................................4

I.    Regulatory Framework .......................................................................................4

      A.    Overview of ACA Provisions Related to Essential Health Benefits ..................4

      B.    Copay Assistance Programs and Related Regulations........................................6

II.   Caremark, Wellmark, and the Program ............................................................7

III.  The Complaint.................................................................................................10

LEGAL STANDARD FOR MOTIONS TO DISMISS .....................................................12

ARGUMENT......................................................................................................................14

I.    Gluesing's Claims Must Be Resolved Through Individual Arbitration.......................14

      A.    A Valid Agreement to Arbitrate Exists, and Gluesing Is Bound by That
            Agreement........................................................................................................15

      B.    Because the Agreement's Arbitration Provision Incorporates the AAA Rules,
            an Arbitrator Must Determine Whether Gluesing's Claims Fall Within the
            Scope of the Arbitration Provision....................................................................17

      C.    Both Caremark and PrudentRx Are Entitled to Invoke the Agreement's
            Arbitration Provision .......................................................................................20

II.   Gluesing Fails to State an ERISA Claim ...........................................................23

      A.    Gluesing Fails to Plead that Caremark or PrudentRx Qualifies as an ERISA
            Fiduciary .........................................................................................................24

      B.    Gluesing's Alleged "Fiduciary Acts" Do Not Show that Defendants Are
            ERISA Fiduciaries ..........................................................................................28

            1.    The Program Features .............................................................................29

            2.    Alleged Deceptive Instructions and Insurance Plan ...............................32

III.    Plaintiff's RICO Claim Fails as a Matter of Law ..........................................................36

      A.    Gluesing Lacks Standing to Assert Her RICO Claim......................................36

      B.    Plaintiff Fails to Adequately Allege the Existence of and Participation in the Conduct of an Enterprise.................................................................................39

            1.    Gluesing Fails to Allege that Caremark Conducted the Affairs of an Enterprise ......................................................................................41

            2.    Gluesing Fails to Allege that PrudentRx Conducted the Affairs of an Enterprise ......................................................................................43

      C.    Gluesing Has Not Pled a "Pattern of Racketeering Activity" ..........................43

            1.    Gluesing Fails to Adequately Allege Mail and Wire Fraud .......................44

            2.    Gluesing Fails to Adequately Allege a Violation of the Travel Act...........46

CONCLUSION.................................................................................................................47

ORAL ARGUMENT REQUESTED ...............................................................................48

CERTIFICATE OF SERVICE ........................................................................................50

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*A & B Campbell Family v. Chesakpeake Energy Corp.*,
No. 3:15-cv-340, 2024 WL 4009633 (M.D. Pa. Aug. 30, 2024) .............................................. 40

*Aetna Cas. Co. v. P B Autobody*,
43 F.3d 1546 (1st Cir. 1994) ................................................................................................... 43

*Alves v. Harvard Pilgrim Health Care Inc.*,
204 F. Supp. 2d 198 (D. Mass. 2002) ............................................................................... 30, 33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 12

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................................................ 14

*Bafford v. Northrop Grumman Corp.*,
994 F.3d 1020 (9th Cir. 2021) ................................................................................................ 30

*Barbosa v. Midland Credit Mgmt., Inc*,
981 F.3d 82 (1st Cir. 2020) ..................................................................................................... 14

*Bastian v. Petren Res. Corp.*,
892 F.2d 680 (7th Cir. 1990) .................................................................................................. 38

*Beddall v. State St. Bank & Tr. Co.*,
137 F.3d 12 (1st Cir. 1998) ................................................................................... 13, 24, 25, 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 12

*Bickley v. Caremark Rx, Inc.*,
361 F. Supp. 2d 1317 (N.D. Ala. 2004) .................................................................................. 28

*Bosse v. New York Life Ins. Co.*,
992 F.3d 20 (1st Cir. 2021) ......................................................................................... 15, 17, 18

*Boston Cab Dispatch, Inc. v. Uber Tech., Inc.*,
No. 13-10769-NMG, 2015 WL 314131 (D. Mass. Jan. 26, 2015) .......................................... 38

*Boyd v. TTI Floorcare N. Am.*,
230 F. Supp. 3d 1266 (N.D. Ala. July 29, 2011) .................................................................... 41

*Boyle v. United States*,
    556 U.S. 938 (2009)...................................................................................................... 39

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)...................................................................................................... 40

*Buruk v. Experian Info. Sols., Inc.*,
    732 F. Supp. 3d 165 (D. Mass. 2024) ......................................................................... 18

*CE Design Ltd. v. Am. Economy Ins. Co.*,
    755 F.3d 39 (1st Cir. 2014)........................................................................................... 38

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
    474 F.3d 463 (7th Cir. 2007) .................................................................................. 27, 31

*Cleveland v. United States,*
    531 U.S. 12 (2000)................................................................................................... 44, 46

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
    228 F.3d 24 (1st Cir. 2000)........................................................................................... 14

*Colligan v. Mary Hitchcock Mem'l Hosp.*,
    No. 16-CV-513-JD, 2018 WL 6607706 (D.N.H. Dec. 17, 2018)............................................ 35

*Cordero–Hernandez v. Hernandez–Ballesteros*,
    449 F.3d 240 (1st Cir. 2006)......................................................................................... 45

*D'Agostino v. Ev3, Inc.*,
    845 F.3d 1 (1st Cir. 2016)............................................................................................. 12

*Doe One v. CVS Pharmacy, Inc.*,
    348 F. Supp. 3d 967 (N.D. Cal. 2018) ......................................................................... 27

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
    223 F.3d 12 (1st Cir. 2000)........................................................................................... 36

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*,
    93 N.Y.2d 584, 693 N.Y.S.2d 857, 715 N.E.2d 1050 (1999)...................................... 17

*Faren v. ZeniMax Online Studios, LLC*,
    No. CV EA-23-1270, 2024 WL 1374778 (D. Md. Mar. 29, 2024) ......................................... 14

*Feinstein v. Resol. Tr. Corp.*,
    942 F.2d 34 (1st Cir. 1991)........................................................................................... 47

*Femino v. Sedgwick Claims Mgmt. Servs., Inc.*,
    No. CV 20-11373-FDS, 2021 WL 3190817 n.2 (D. Mass. July 28, 2021) ................. 12

*Fletcher v. ConvergEx Grp. LLC*,
388 F. Supp. 3d 293 (S.D.N.Y. 2019) ...................................................................... 24

*Friendly Hotel Boutique Corp. v. ME & A Capital, LLC*,
No. 11-1709, 2012 WL 4062795 (D.P.R. Sept. 14, 2012) ....................................... 41

*Gardner v. Starkist Co.*,
418 F. Supp. 3d 443 (N.D. Cal. 2019) ..................................................................... 40

*George Lussier Enters., Inc. v. Subaru of New England, Inc.*,
393 F.3d 36 (1st Cir. 2004)................................................................................. 37, 38

*George v. Nat'l Water Main Cleaning Co.*,
2011 WL 841226 (D. Mass. Mar. 23, 2011).............................................................. 45

*Giuliano v. Fulton*,
399 F.3d 381 (1st Cir. 2005)..................................................................................... 43

*Gomez v. Guthy–Renker, LLC*,
No. 14-cv-1425, 2015 WL 4270042 (C.D. Cal. Jul. 13, 2015) ................................ 40

*Hayduk v. Lanna,*
775 F.2d 441 (1st Cir.1985)....................................................................................... 47

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019).................................................................................................... 17

*HIV & Hepatitis Pol'y Inst. v. United States Dep't of Health & Hum. Servs.*,
728 F. Supp. 3d 1 (D.D.C. 2023)........................................................................... 6, 7

*Hollowell v. Cincinnati Ventilating Co.*,
711 F. Supp. 2d 751 (E.D. Ky. 2010) ...................................................................... 34

*Hoye–House v. A 1998 80' S/Y Godspeed*,
673 F. Supp. 3d 152 (D.R.I. 2023) .......................................................................... 12

*Humana Inc. v. Biogen, Inc.*,
126 F.4th 94 (1st Cir. 2025)................................................................................. 44, 45

*In re Express Scripts/Anthem ERISA Litig.*,
285 F. Supp. 3d 655 (S.D.N.Y. 2018) ............................................................. 3, 30, 33

*In re GlassHouse Techs., Inc.*,
604 B.R. 600 (Bankr. D. Mass. 2019) ...................................................................... 22

*In re ING Groep, N.V. ERISA Litig.*,
749 F. Supp. 2d 1338 (N.D. Ga. 2010)..................................................................... 34

*In re UnitedHealth Grp. PBM Litig.*,
No. 16-CV-3352, 2017 WL 6512222 (D. Minn. Dec. 19, 2017) ...................................... 30, 33

*Ince v. Aetna Health Mgmt., Inc.*,
173 F.3d 672 (8th Cir. 1999) ................................................................................................ 33

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
698 F.3d 58 (2d Cir. 2012) ................................................................................................... 16

*Jimenez v. Serv. Emps. Int'l Union Local 775*,
590 F. Supp. 3d 1349 (E.D. Wash. 2022) ............................................................................ 41

*Kenney v. State St. Corp.*,
694 F. Supp. 2d 67 (D. Mass. 2010) .................................................................................... 14

*Kenney v. State St. Corp.*,
754 F. Supp. 2d 288 (D. Mass. 2010) .................................................................................. 34

*Lerner v. Colman*,
26 F.4th 71 (1st Cir. 2022) ...................................................................................... 12, 36, 44

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) .............................................................................................................. 31

*Martinez v. Sun Life Assurance Co. of Canada*,
948 F.3d 62 (1st Cir. 2020) .................................................................................................. 23

*Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue*
*Shield of Massachusetts*,
66 F.4th 307 (1st Cir. 2023) ................................................................................................. 26

*Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield*
*of Massachusetts*,
No. CV 21-10523-FDS, 2022 WL 952247 (D. Mass. Mar. 30, 2022) ................................. 23

*Miranda v. Ponce Fed. Bank*,
948 F.2d 41 (1st Cir. 1991) ............................................................................................. 4, 36

*Moeckel v. Caremark, Inc.*,
622 F. Supp. 2d 663 (M.D. Tenn. 2007) .................................................................. 27, 31, 33

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ................................................................................................................. 14

*MSP Recovery Claims, Series LLC v. Lundbeck, LLC*,
_ F.4th _, 2025 WL 610305 (4th Cir. Feb. 26, 2025) ................................................... 36, 44

*O'Brien v. Wilmington Tr. Nat'l Ass'n as Tr. to CitiBank, N.A.*,
   506 F. Supp. 3d 82 (D. Mass. 2020) .................................................................... 14

*Parm v. Nat'l Bank of Cal., N.A.*,
   242 F. Supp. 3d 1321 (N.D. Ga. 2017) ........................................................... 42, 43

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ...................................................................................... 24, 31

*Pharm. Care Mgmt. Ass'n v. Rowe*,
   429 F.3d 294 (1st Cir. 2005) ...................................................................... 3, 25, 26

*Puerto Rico Fast Ferries LLC v. SeaTran Marine, LLC*,
   102 F.4th 538 (1st Cir. 2024) .............................................................................. 20

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .............................................................................................. 39

*Rivera v. Kress Stores of P.R., Inc.*,
   30 F.4th 98 (1st Cir. 2022) ................................................................................... 13

*Ryan v. Newark Grp.*,
   2024 WL 4815478 (D. Mass. Nov. 18, 2024) ....................................................... 40

*Sanchez v. Triple-S Mgmt., Corp.*,
   492 F.3d 1 (1st Cir. 2007) .................................................................................... 37

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*,
   768 F.3d 284 (3d Cir. 2014) ........................................................................... 26, 31

*Saunders v. First Magnus Fin. Corp.*,
   2018 WL 3432721 (D.N.H. July 16, 2018) ........................................................... 47

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. Oct. 24, 2016) .................................................. 41

*Shay v. Walters*,
   702 F.3d 76 (1st Cir. 2012) .................................................................................. 28

*Shirokov v. Dunlap, Grubb & Waker, PLLC*,
   No. 10-12043-GAO, 2012 WL 1065578 (D. Mass. Mar. 27, 2012) ...................... 38

*Smith v. Nationstar Mortg.*,
   No. 1:17-cv-1483, 2017 WL 6594009 (N.D. Ohio Dec. 21, 2017) ....................... 40

*Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*,
   640 F.3d 471 (1st Cir. 2011) ................................................................................ 16

vii

*Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*,
   526 F.3d 38 (1st Cir. 2008) .................................................................................. 21

*Steel-Rogers v. Glob. Life Sci. Sols. USA, LLC*,
   624 F. Supp. 3d 10 (D. Mass. 2022) ..................................................................... 22

*Sundown by Farkas v. Aetna Life Ins. Co.*,
   No. 23CV1905JMAST, 2024 WL 1051165 (E.D.N.Y. Jan. 16, 2024) ................... 13

*Swack v. Credit Suisee First Boston*,
   383 F. Supp. 2d 223 (D. Mass. 2004) ................................................................... 13

*Symonds v. Credico (USA) LLC*,
   No. 1:20-CV-10192-ADB, 2020 WL 7075028 (D. Mass. Dec. 3, 2020) ............... 20

*Tymoshenko v. Firtash*,
   2015 WL 5505841 (S.D.N.Y. Sept. 18, 2015) ...................................................... 46

*United States ex rel. Berkley v. Ocean State, LLC*,
   No. 20-538-JJM-PAS, 2023 WL 3203641 (D.R.I. May 2, 2023) ......................... 12

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
   146 F. Supp. 3d 337 (D. Mass. 2015) ................................................................... 18

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ................................................................................................ 42

*United States v. Cruz–Ramos*,
   987 F.3d 27 (1st Cir. 2021) ................................................................................... 39

*United States v. Turkette*,
   452 U.S. 576 (1981) ......................................................................................... 39, 40

*United States v. Velazquez–Fontanez*,
   6 F.4th 205 (1st Cir. 2021) ................................................................................. 4, 43

*United States v. Woodward*,
   149 F.3d 46 (1st Cir. 1998) ................................................................................... 46

*VanDenBroeck v. CommonPoint Motg. Co.*,
   210 F.3d 696 (6th Cir. 2000) ................................................................................ 40

*Watson v. Deaconess Waltham Hosp.*,
   298 F.3d 102 (1st Cir. 2002) ................................................................................. 23

*Webb v. Injured Workers Pharmacy, LLC*,
   72 F.4th 365 (1st Cir. 2023) ................................................................................. 35

Statutes

9 U.S.C. § 3 ............................................................................................................................. 1, 14

18 U.S.C. § 1341 ........................................................................................................................ 11

18 U.S.C. § 1952 ............................................................................................................... 11, 46, 47

18 U.S.C. § 1961 .................................................................................................................... 39, 43

18 U.S.C. § 1962(c) .................................................................................................................... 39

18 U.S.C. § 1964 ........................................................................................................................ 36

29 U.S.C. § 1002(21)(A) ......................................................................................................... 25, 26

29 U.S.C. § 1102(a) ................................................................................................................... 24

29 U.S.C. § 1132 ....................................................................................................................... 23

29 U.S.C. § 1185d(a)(1) ............................................................................................................ 32

29 U.S.C. § 1191b ...................................................................................................................... 32

42 U.S.C. 300gg ................................................................................................................. 4, 5, 32

42 U.S.C. § 18022 ..................................................................................................................... 4, 5

Rules

Fed. R. Civ. P. 9(b) .................................................................................................................... 12

Fed. R. Civ. P. 12(b)(1), 12(b)(6) ............................................................................................... 1

Regulations

29 C.F.R. § 2509.75-8 ................................................................................................................ 31

45 C.F.R. § 147.126(c)(2) ........................................................................................................... 5

45 C.F.R. § 156.122(h) ............................................................................................................... 5

45 C.F.R. § 156.130(h) ............................................................................................................... 7

Other

CMS, Affordable *Care Act Implementation FAQs - Set 18*, https://shorturl.at/LyG7V ................ 5

HHS, Patient Protection and Affordable Care Act; HHS Notice of Benefit and
Payment Parameters for 2021; Notice Requirement for Non-Federal Governmental
Plans, 85 Fed. Reg. 29,164, 29,232 (May 14, 2020) ......................................................... 5, 6, 7

Defendants PrudentRx LLC ("PrudentRx") and Caremark Rx, L.L.C. ("Caremark"), by counsel, move this Court for an order staying this action and compelling arbitration under Section 3 of the Federal Arbitration Act.  9 U.S.C. § 3.  In the alternative, Defendants move this Court for an order dismissing the Complaint (ECF No. 1) for failure to state a claim upon which relief can be granted, for lack of subject-matter jurisdiction, or both.  *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Defendants submit the following memorandum of law in support of this motion, as well as the Declarations of Susan Boeshart and Allison Johansson.

## MEMORANDUM OF LAW

At its core, Plaintiff Sheila Gluesing's Complaint is nothing more than a stated desire that her prescription drug benefits, provided by her employer through Wellmark Health Plan of Iowa (an independent licensee of the Blue Cross and Blue Shield Associated), be structured differently.  Compl. ¶ 17.[1]  Notably, for the purpose of this Motion, she seeks to express her dissatisfaction with her employer's plan by attempting to pursue novel, but ultimately flawed, legal claims against Caremark and PrudentRx.

As alleged, Caremark is the pharmacy benefit manager for the Wellmark plan, and PrudentRx provides pharmaceutical manufacturer co-pay program related services to plan sponsors like the Wellmark plan.  PrudentRx allegedly works with Caremark, CVS Specialty Pharmacy, and Wellmark to assist with what is called a copay assistance program (the "Program") that helps reduce overall costs for the Wellmark plan.  Gluesing alleges that Wellmark enrolled her in the Program.  Compl. ¶ 17.  Gluesing incorrectly concludes that, as applied to her, the Program runs afoul of the Affordable Care Act by designating certain

---

[1] For purposes of this Motion only, Defendants treat the well pleaded allegations in Plaintiff's Complaint as true.  Defendants specifically reserve the right to challenge the allegations.

1

specialty drugs as non-essential health benefits and then not counting payments for those drugs toward annual cost-sharing limits. That is the purported basis for her ERISA and RICO claims against Caremark and PrudentRx, but neither claim survives scrutiny.

Despite its length, Gluesing's Complaint lacks relevant details and facts to support her personal claims. The Complaint fails to provide details regarding the patient copay assistance program in which she claims to participate. Compl. ¶ 17. For example, Gluesing alleges that she currently takes a prescription medication called Dupixent, which is manufactured by Sanofi and Regeneron who offer a patient copay assistance program called Dupixent MyWay®, Compl. ¶ 17, but the Complaint lacks allegations about the details of any misrepresentations to her about this program. Indeed, the Complaint is void of any allegations regarding communications between Gluesing and either of the Defendants. Further, the Complaint alleges only that Ms. Gluesing has been "forced to incur excess healthcare expenses" without any supporting underlying facts. *Id.*

As a threshold matter, pursuant to the Federal Arbitration Act, and based on what Gluesing agreed to in CVS Specialty Pharmacy's Terms of Use, this Court should stay this matter and compel arbitration. That agreement requires arbitration of any claims arising out of or related to services and goods provided by CVS Specialty Pharmacy and any goods or services from any affiliate of CVS Specialty Pharmacy, as well as "any aspect" of Ms. Gluesing's relationship with CVS Specialty Pharmacy. The relevant factual background, standard of review, and grounds for compelling arbitration are discussed below in Part I of the Argument section. Simply put, Ms. Gluesing has sued over medication that she receives from CVS Specialty Pharmacy to challenge a Program that she alleges CVS Specialty Pharmacy operates alongside the Defendants. Her claims belong in arbitration.

In the alternative, and without waiving any right to enforce Gluesing's agreement to arbitrate, neither of Gluesing's two claims can survive a motion to dismiss. As explained below, Count I fails as a matter of law because Gluesing does not allege that an ERISA fiduciary committed a breach, a requisite element of her claim. ERISA "is not designed to regulate or afford remedies against entities," such as Caremark or PrudentRx, "that provide services to plans." *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 305 (1st Cir. 2005) (per curiam) (citation and quotation marks omitted). By the nature of the relationship, third-party service providers "do not exercise discretionary authority or control in the management and administration of the plan" and are not ERISA fiduciaries. *See, e.g.*, *Rowe*, 429 F.3d at 301 (holding that a PBM was not an ERISA fiduciary).

That is the case here. Gluesing does not and could not allege any facts showing that Defendants were named in or had discretion over her health plan—the *sine qua non* of fiduciary status. Gluesing's conclusory labelling a handful of allegations in a single paragraph against Defendants as "fiduciary acts" does not salvage her claim for several reasons. Compl. ¶ 161. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████ "Numerous courts have explained that when a service provider or PBM acts pursuant to the terms of a contract, it does not exercise discretionary authority and does not act as an ERISA fiduciary." *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 679 (S.D.N.Y. 2018). That Defendants are not fiduciaries impels dismissal of Count I. *See* Part II, *infra*.

3

Count II, where Gluesing deploys "the litigation equivalent of a thermonuclear device"—civil RICO—also fails as a matter of law.[2]  She alleges that Caremark and PrudentRx have engaged in a multi-year criminal enterprise, where they committed numerous acts of federal wire and mail fraud to advance the Program.  But, while heavy on legal conclusions and rhetoric criticizing the healthcare industry in general, the Complaint lacks the requisite specifics spelling out the contours of, and Defendants' direction of, the supposed criminal enterprise.  This is no doubt a result of Gluesing's effort to plead an ordinary commercial relationship as a racketeering enterprise.  And the predicate acts that she describes generally, even if true, would not have harmed Gluesing or her putative class members.  Therefore, Count II fails as a matter of law.  *See* Part III, *infra*.

This Court should dismiss the complaint.

**BACKGROUND**

I.      **Regulatory Framework**

A.      **Overview of ACA Provisions Related to Essential Health Benefits**

The ACA limits the annual amount that health insurers and group health plans can require individuals to pay for essential health benefits ("EHB").[3]  42 U.S.C. § 300gg-6(b); *id.*, § 18022(a)(1); *id.*, § 18022(c)(1).  This cost-sharing limit includes "deductibles, coinsurance, copayments, or similar charges," as well as "any other expenditure . . . with respect to essential health benefits covered under the plan."  *Id.*, § 18022(c)(3)(A).  "Because cost-sharing limits . . . apply only to EHB, plans are not required to apply the annual limitation on

---

[2] *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), *abrogated on other grounds as recognized in United States v. Velazquez–Fontanez*, 6 F.4th 205, 213 n.2 (1st Cir. 2021).

[3] EHBs, as a legal term of art, do not equate to medical necessity under the ACA.

4

out-of-pocket maximums to benefits that are not EHB." CMS, *Affordable Care Act Implementation FAQs - Set 18*, https://shorturl.at/LyG7V.

"Essential health benefits" include ten different benefit categories, including "[p]rescription drugs." 42 U.S.C. § 18022(b). The ACA requires individual and small group plans to cover "essential health benefits"—*i.e.*, EHBs. 42 U.S.C. § 300gg-6(a). The ACA does not require "self-insured group health plans and large group market plans . . . to offer EHB." HHS *et al.*, FAQ about Affordable Care Act Implementation Part 66 (April 2, 2024), https://www.cms.gov/files/document/aca-part-66.pdf-0. "[T]o the extent these plans cover EHBs, they must comply with the annual" limits on cost-sharing. *Id.* These self-insured group health plans and large group market plans define EHBs consistent with a state benchmark plan, which allows them to choose the specific prescription drugs to include or not include within certain categories and classes as EHBs. *See* 45 C.F.R. § 147.126(c)(2). Only expenditures for EHBs under the benchmark plan count toward the ACA's annual cost-sharing limit.

The ACA directs HHS to define EHBs. 42 U.S.C. § 18022(b)(1). In June 2024, HHS required, for the first time, that small-group and individual insurance plans count all prescription drugs that they offer as EHBs for the ACA's annual cost-sharing limit. 45 C.F.R. § 156.122(h). HHS has not, however, imposed such requirements on large group or self-insured plans. HHS *et al.*, FAQ about Affordable Care Act Implementation Part 66 at 3 (April 2, 2024) ("The final 2025 NBPP does not address the application of this policy to large group market health plans and self-insured group health plans" and noting further, not yet proposed, rulemaking would be required to do so), https://www.cms.gov/files/document/aca-part-66.pdf-0.

5

B.        **Copay Assistance Programs and Related Regulations**

Some drug manufacturers offer patients direct financial support to pay for certain prescription drugs—copay assistance programs. *HIV & Hepatitis Pol'y Inst. v. United States Dep't of Health & Hum. Servs.*, 728 F. Supp. 3d 1, 5 (D.D.C. 2023). For example, "a drug manufacturer may provide a patient with a coupon that, when presented to a pharmacy or other point of sale, directs the pharmacy to bill all or part of the patient's copayment or coinsurance obligations to the drug manufacturer instead of the patient." *Id.* Although the programs differ, "the through-line is some payment by the drug manufacturer to subsidize the patient's purchase of the drug at the point of sale." *Id.*

HHS is well aware of drug manufacturer copay assistance programs and their relationship to annual cost-sharing limits. Before 2019, "federal rules did not explicitly state whether issuers and group health plans had the flexibility to determine how to factor in direct drug manufacturer support amounts towards the annual limitation on cost sharing." HHS, Patient Protection and Affordable Care Act; HHS Notice of Benefit and Payment Parameters for 2021; Notice Requirement for Non-Federal Governmental Plans, 85 Fed. Reg. 29,164, 29,232 (May 14, 2020) (hereinafter "2021 NBPP").

In June 2019, HHS promulgated a regulation addressing the treatment of manufacturer copay assistance for the annual cost-sharing limit:

> Notwithstanding any other provision of this section, and to the extent consistent with state law, amounts paid toward cost sharing using any form of direct support offered by drug manufacturers to enrollees to reduce or eliminate immediate out-of-pocket costs for specific prescription brand drugs that have an available and medically appropriate generic equivalent are not required to be counted toward the annual limitation on cost sharing (as defined in paragraph (a) of this section).

45 C.F.R. § 156.130(h) (effective June 24, 2019).

HHS did not address what happens when a generic equivalent is unavailable.  HHS, the Department of Labor, and the Department of Treasury later issued guidance that until a new rulemaking "is issued and effective, the Departments *will not initiate an enforcement action if an issuer of group or individual health insurance coverage or a group health plan excludes the value of drug manufacturers' coupons from the annual limitation on cost sharing*, including in circumstances in which there is no medically appropriate generic equivalent available."  HHS et al., FAQs about Affordable Care Act Implementation Part 40 at 3 (Aug. 26, 2019) (emphasis added) (hereinafter "FAQs Part 40"), https://shorturl.at/ywfE5.

HHS later amended 45 C.F.R. § 156.130(h) to clarify that drug manufacturer assistance is not required to be counted "toward the annual limitation on cost sharing" regardless of whether a generic equivalent is available.  2021 NBPP, 85 Fed. Reg. at 29,231, 29,261.  A federal district court vacated HHS's amendment.  *HIV & Hepatitis Pol'y Inst.*, 728 F. Supp. 3d at 17 & n.5.  The original text of § 156.130(h) went back into effect, as did the agency guidance that HHS, DOL, and Treasury will not pursue an enforcement action against insurers or plans that do not count drug manufacturer assistance toward the ACA's annual cost-sharing limit, including "in circumstances in which there is no medically appropriate generic equivalent available."  CMS, FAQs Part 40, *supra* at 3.

## II.      Caremark, Wellmark, and the Program

Gluesing receives health insurance from Wellmark Health Plan of Iowa that provides her prescription drug benefits at issue.  Compl. ¶ 17; *see also* Decl. of Susan Boeshart, ¶ 3 & Ex. 1 (hereinafter "Boeshart Decl.").[4]  Integral to her asserted causes of action are Gluesing's

---

[4] As discussed below, Gluesing's ERISA claim repeatedly makes reference to, and necessarily relies on, her plan's requirements and agreements between Wellmark and Defendants to implement the Program.  Gluesing's plan documents and Wellmark's agreements with Defendants are thus integral

many allegations relating to her plan requirements and the agreements between Wellmark and Defendants to implement the Program. *See*, *e.g.*, Compl. ¶ 2 (alleging funds diverted to "health plan sponsors" by Defendants); *id.* ¶ 3 (discussing the relationship of the plan and its "affiliated PBMs (like Caremark)"); *id.* ¶ 7 (discussing limits in ACA on health plan sponsors); *id.* ¶ 9 (discussing the alleged details of the Program); *id.* ¶¶ 10-11 (discussing the designation of "non-essential health benefits," which are found in the Wellmark plan documents, and how the requirements under the Program impact those designations for health plans); *id.* ¶ 12 (discussing the agreement between plan sponsors like Wellmark and Defendants); *id.* ¶ 17 (discussing Wellmark's agreement to participate in the Program).

The referenced agreement between Wellmark and Caremark is for pharmacy benefit services, whereby Caremark provides services to administratively implement the prescription drug benefits that Wellmark offers to Gluesing and other plan members and beneficiaries, and it is called the Pharmacy Benefit Services Agreement ("Agreement"). Boeshart Decl. ¶¶ 3-6 & Exs. 2-5.



The Agreement states that ███████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████ Ex. 2 to Boeshart Decl., Pharmacy Benefit Services Agreement, § 38.11. The Agreement also states that ███████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████ *Id.*

---

to her claim, incorporated by reference into the pleadings, and appropriately considered in connection with this Motion.

According to the Complaint, Wellmark has "agreed to" and "participates in the PrudentRx Copay Program and enrolled Ms. Gluesing in the Program."  Compl. ¶¶ 12, 17; *see also* Ex. 1 to Boeshart Decl., Benefit Summary at 4.  ██████████████████████ ██████████████████████████████████████████████████████ Ex. 6 to Boeshart Decl., Vendor Election Form at 3.  ████████████████████████████ ████████████████████████████████████████ Ex. 6 to Boeshart Decl., Vendor Election Form at 3 (████████████████████████████████████ ████████████████████████); Ex. 5 to Boeshart Decl. (Point Solutions Management Amendment to the Agreement).

████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████" Ex. 6 to Boeshart Decl., Vendor Election Form at 4.  Manufacturer copay assistance programs generally provide a limited amount of financial assistance.  ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████" *Id.* at 4.

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[5] The Complaint incorrectly names Caremark Rx, L.L.C. as a defendant.  ████████████ ████████████████████████████████████████████████████████ Ex. 6 to Boeshart Decl., Vendor Election Form at 3.  For purposes of this motion, Caremark Rx, L.L.C. does not dispute Gluesing's allegations about its involvement in the Program as they are not relevant to the legal arguments for a stay or dismissal of this action.

9



" Ex. 6 to Boeshart Decl., Vendor Election Form at 6 (emphasis supplied).

" *Id.* at 5-6.

" *Id.* at 7.

## III.    The Complaint

On December 26, 2024, Gluesing filed a two-count putative class action complaint against Caremark and PrudentRx.  ECF No. 1.  In Count I, Gluesing seeks injunctive relief, attorney's fees, and costs under ERISA for Caremark and PrudentRx's alleged breaches of fiduciary duty and statutory violations.  *Id.* ¶¶ 160-66.  She alleges that Caremark and

PrudentRx breached their fiduciary duties when "enrolling plan participants and beneficiaries in the PrudentRx Copay Program and operating the PrudentRx Copay Program," including by failing to count copays toward the ACA's annual cost-sharing limit, by misleading plan members when instructing them about manufacturer copay assistances programs, and by operating the Program to benefit themselves rather than acting in the best interests of plan members and beneficiaries. *Id.* ¶ 163.

In Count II, Gluesing alleges that Caremark and PrudentRx conducted an association-in-fact RICO enterprise—the "PrudentRx Copay Assistance Fraud Enterprise." The enterprise allegedly aims "to profit by diverting patient copay assistance funds and forcing patients to bear the cost of additional healthcare expenses as a result." *Id.* at ¶ 172. In conclusory fashion, and without the particularity that Rule 9(b) demands, Gluesing alleges generally that PrudentRx and Caremark's "scheme" involves a "common course of conduct" to (a) "deceive patient copay assistance programs into disbursing excessive patient copay assistance," (b) "divert patient copay assistance to benefit their health plans [sic] clients rather than patients," (c) ensure that "targeted patients are deprived of the ability to offset some of their healthcare costs with patient copay assistance funds," and (d) "force patients to bear additional healthcare costs." *Id.* ¶ 179.

Gluesing concludes PrudentRx and Caremark allegedly carried out this enterprise with predicate acts of mail and wire fraud and travel in interstate and foreign commerce in aid of a racketeering enterprise. *See id.* ¶ 177 (citing 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1952 (Travel Act). Gluesing does not plead the details of the predicate fraud, nor does she allege that Defendants made misrepresentations to her personally. Finally, Gluesing alleges that the Defendants harmed her and the putative class members by causing them to

11

pay "more in healthcare expenses than they would have in the absence of . . . the PrudentRx Copay Assistance Fraud Enterprise." *Id.* ¶ 183.

## LEGAL STANDARD FOR MOTIONS TO DISMISS[6]

To withstand a motion to dismiss, a complaint must offer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *cf. Hoye–House v. A 1998 80' S/Y Godspeed*, 673 F. Supp. 3d 152, 154 (D.R.I. 2023) (applying the same standard under Rule 12(b)(1)). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b)'s heightened pleading standard also applies to Gluesing's RICO claim because it sounds in fraud. *See Lerner v. Colman*, 26 F.4th 71, 84 (1st Cir. 2022) (applying Rule 9(b) to RICO claims premised on mail and wire fraud); *United States ex rel. Berkley v. Ocean State, LLC*, No. 20-538-JJM-PAS, 2023 WL 3203641, at *6 (D.R.I. May 2, 2023) (Rule 9(b) applies when "claims sound in fraud."). Gluesing must therefore "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how" of the predicate acts. *D'Agostino v. Ev3, Inc.*, 845 F.3d 1, 10 (1st Cir. 2016).

This Court may consider Gluesing's plan documents and the agreements between Wellmark and Defendants on a motion to dismiss. *See*, *e.g.*, *Femino v. Sedgwick Claims Mgmt. Servs., Inc.*, No. CV 20-11373-FDS, 2021 WL 3190817, at *1 n.2 (D. Mass. July 28, 2021)

---

[6] As noted above, the relevant standards and discussion of the grounds for the motion to compel arbitration are contained in Part I below.

("The court may consider the Plan document at the motion to dismiss stage even though it is not attached to the complaint because the complaint incorporates it by reference and the two alleged violations depend on it."). "When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (per curiam); *Rivera v. Kress Stores of P.R., Inc.*, 30 F.4th 98, 102 (1st Cir. 2022). "Even if such documents are not attached to the complaint, the defendant may attach them to its motion to dismiss—and a court may consider them—without turning the motion into one for summary judgment." *Swack v. Credit Suisee First Boston*, 383 F. Supp. 2d 223, 231 (D. Mass. 2004).

The incorporation-by-reference doctrine applies here. Gluesing's claims hinge on the requirements of her health plan from Wellmark and the agreements between Wellmark and Defendants. Compl. ¶¶ 17, 38. Indeed, Gluesing alleges (incorrectly) that Defendants are fiduciaries of her health plan under ERISA, a status that requires a party to be named in plan documents or to exercise discretion over the plan. Correspondingly, and as discussed in the background section, Gluesing makes many allegations relating to her plan requirements and the agreements between Wellmark and Defendants to implement the Program. Compl. ¶¶ 2-3, 7, 9, 10-11, 12, 17. Gluesing's Wellmark plan documents and the Wellmark agreements with Defendants are therefore integral to the complaint and incorporated by reference. *See, e.g.*, *Kenney v. State St. Corp.*, 694 F. Supp. 2d 67, 70 (D. Mass. 2010) (taking notice of plan descriptions and SEC filings on a motion to dismiss); *Sundown by Farkas v. Aetna Life Ins. Co.*, No. 23CV1905JMAST, 2024 WL 1051165, at *1 n.2 (E.D.N.Y. Jan. 16, 2024) ("Plan

13

documents are routinely considered in ERISA actions because they are written instruments which are integral to the complaint."); *Faren v. ZeniMax Online Studios, LLC*, No. CV EA-23-1270, 2024 WL 1374778, at *4 (D. Md. Mar. 29, 2024) ("[A] wide array of documents [can] be integral to complaints when ruling on motions to dismiss ERISA claims."). To the extent that Gluesing's allegations contradict these documents, the documents prevail over her contrary allegations. *E.g.*, *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000); *O'Brien v. Wilmington Tr. Nat'l Ass'n as Tr. to CitiBank, N.A.*, 506 F. Supp. 3d 82, 90 (D. Mass. 2020).

## ARGUMENT

### I.    Gluesing's Claims Must Be Resolved Through Individual Arbitration

Defendants move to stay this action, and to compel individual arbitration of Gluesing's claims, pursuant to § 3 of the Federal Arbitration Act ("FAA"), because Gluesing is subject to a valid and enforceable arbitration agreement that encompasses her claims against both Defendants. The FAA embodies a "liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 3 of the FAA provides that a court, upon determining that an action before it is subject to an enforceable arbitration agreement, "*shall* … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). As a general matter, the party seeking to compel arbitration pursuant to § 3 of the FAA "must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Barbosa v. Midland Credit Mgmt., Inc*, 981 F.3d 82, 87 (1st Cir. 2020)

14

(citation and internal quotation marks omitted).  With respect to whether the claims fall within the scope of the arbitration agreement, that issue must be deferred to the arbitrator when—as here—the parties have reserved questions of arbitrability for the arbitrator. *See, e.g.*, *Bosse v. New York Life Ins. Co.*, 992 F.3d 20, 28 (1st Cir. 2021).  As further discussed below, each of the requirements for compelling arbitration is satisfied here.

## A.    A Valid Agreement to Arbitrate Exists, and Gluesing Is Bound by That Agreement

Gluesing agreed to the relevant arbitration provision contained within the CVS Specialty Terms of Use when she created an online user account with CVS Specialty Pharmacy on April 1, 2022.  *See* Decl. of Allison Johansson ¶ 2 (hereinafter "Johansson Decl.").  As part of the online registration process, Gluesing was taken to a webpage that required her to click a box stating: "I agree to the CVS Specialty Pharmacy Terms and Conditions."[7]  *Id.* ¶ 5. The words "CVS Specialty Terms and Conditions" contained a hyperlink to the full CVS Specialty Terms of Use then in effect.  *Id.*  Gluesing acknowledged her agreement to these terms by creating the account.  *See id.* ¶ 2.

The version of the CVS Specialty Terms of Use in effect when Gluesing created her online user account for CVS Specialty Pharmacy (the "Agreement") contained a "Dispute Resolution" provision that stated, in relevant part, as follows:

> **EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU, ON THE ONE HAND, AND CVS/SPECIALTY OR ITS SUPPLIERS OR VENDORS, ON THE**

---

[7] The Terms of Use likewise state, "By tapping or clicking 'I agree,' 'I accept,' or any other similar button or box with respect to this Agreement, or by using the Service (including any access to the Service), you expressly agree to be bound by this Agreement, by and between you and CVS Caremark Specialty Pharmacy ('CVS/specialty,' 'us,' or 'we'), which incorporates by this reference any additional terms and conditions posted by CVS/specialty through the Site, or otherwise made available to you by CVS/specialty."  Ex. 1 to Johansson Decl. at 2.

15

**OTHER HAND, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY AND YOU AGREE THAT CVS/SPECIALTY AND YOU ARE EACH WAIVING THE RIGHT TO TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.** The arbitration will be administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules … as amended by this Agreement.

Ex. 1 to Johansson Decl. at 16 (emphasis in original).

This provision constitutes a valid and enforceable agreement to arbitrate that is binding on Gluesing. Because "[t]he FAA represents 'the fundamental principle that arbitration is a matter of contract,' … 'principles of state contract law control the determination of whether a valid agreement to arbitrate exists.'" *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 475 (1st Cir. 2011) (citation omitted). The Terms of Service contain a New York choice-of-law provision. Ex. 1 to Johansson Decl. at 16. Under New York law, "courts 'look to the basic elements of the offer and acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract.'" *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589, 693 N.Y.S.2d 857, 715 N.E.2d 1050 (1999)). Here, Gluesing manifested her assent to arbitrate when she accepted the Terms of Service containing a conspicuous mandatory arbitration provision. *See* Johansson Decl. ¶¶ 3, 5-6; Ex. 1 to Johansson Decl. at 2; *Wu v. Uber Techs., Inc.*, ---N.E.3d---, No. 90, 2024 WL 4874383, at *9 (N.Y. Nov. 25, 2024) ("clickwrap" process

16

that required plaintiff to check box confirming agreement to hyperlinked terms containing arbitration provision "put plaintiff on inquiry notice of the January 2021 terms—including the prominently placed arbitration agreement—and she manifested her assent to those terms by both clicking on the box and pressing the 'confirm' button"). Accordingly, the requirements of a valid arbitration agreement that is binding on Gluesing are both satisfied here.

**B.    Because the Agreement's Arbitration Provision Incorporates the AAA Rules, an Arbitrator Must Determine Whether Gluesing's Claims Fall Within the Scope of the Arbitration Provision**

This Court need not consider the next requirement of whether Gluesing's claims fall within the scope of the Agreement's arbitration provision because the Agreement delegates the question of arbitrability to the arbitrators by incorporating the rules of the American Arbitration Association. As the First Circuit has explained, "[w]here there is a clear and unmistakable delegation of arbitrability issues, the court's proper inquiry 'before referring a dispute to an arbitrator' is limited to 'determin[ing] [(1)] whether a valid arbitration agreement exists ... [b]ut [(2)] if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.'" *Bosse*, 992 F.3d at 28 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 530 (2019)) (original alterations). "[I]ncorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator." *Id.*

Here, the Agreement provides that "[t]he arbitration will be administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules … as amended by this Agreement." Ex. 1 to Johansson Decl. at 16. This language incorporates the AAA's rules and thus, as in *Bosse*, constitutes "clear and unmistakable evidence of the

17

parties' intent to delegate arbitrability issues to the arbitrator." *Bosse*, 992 F.3d at 28; *see also Buruk v. Experian Info. Sols., Inc.*, 732 F. Supp. 3d 165, 170 (D. Mass. 2024) (arbitrability delegated to arbitrator through contract language stating that "[t]he arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA'), as modified by this Agreement"). Accordingly, the Court need not decide whether Gluesing's claims fall within the scope of the Agreement's arbitration provision because that issue has been delegated to the arbitrators.

Even if the Court were to reach the issue of arbitrability, Gluesing's claims easily fall within the scope of the Agreement's broad arbitration provision. Because "[t]he FAA reflects a liberal federal policy favoring arbitration agreements," courts apply a "presumption in favor of arbitrability" when deciding the scope of arbitrable issues. *Bosse*, 992 F.3d at 31 (citation and internal quotation marks omitted). Moreover, "[t]he use of phrases such as 'arising under' or 'arising out of' in an arbitration provision generally indicates an intent to arbitrate a broad scope of claims." *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 347 (D. Mass. 2015), *aff'd sub nom.*, *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26 (1st Cir. 2016). The Agreement's arbitration provision broadly requires arbitration of "all disputes arising out of or related to this Agreement or any aspect of the relationship between you, on the one hand, and CVS/Specialty or its suppliers or vendors, on the other hand, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory." Ex. 1 to Johansson Decl. at 16. Construing this language broadly and in favor of arbitration, as the FAA requires, Gluesing's claims "aris[e] out of or relate[] to" an "aspect" of her

18

relationship with CVS Specialty Pharmacy because she repeatedly alleges in her Complaint that CVS Specialty Pharmacy is part of the Program that is allegedly causing her injury.

For example, she alleges that "PrudentRx has *teamed up with* pharmacy benefit manager ("PBM") Caremark, *and Caremark's affiliated specialty pharmacy, CVS Specialty Pharmacy*, to divert hundreds of millions, if not billions, of dollars … . Through this scheme, *they* knowingly and intentionally ensure patients bear additional healthcare costs." Compl. ¶ 1 (emphasis added). She also asserts that Defendants "deployed CVS Specialty Pharmacy to help operationalize" the Program, *id.* ¶ 9, and that CVS Specialty Pharmacy "operate[s]" the Program, *id.* ¶ 38. Gluesing further alleges that "CVS Specialty Pharmacy conducts or participates in the conduct of the affairs of the PrudentRx Copay Assistance Fraud Enterprise," including by connecting "targeted patients with PrudentRx representatives," by transmitting "prescription drug claim information," and by collecting copays. *Id.* ¶ 175. In sum, Gluesing brings claims based on a prescription drug that she receives from CVS Specialty Pharmacy and based on the Program that she alleges CVS Specialty Pharmacy operates alongside Defendants related to her prescription drug. Based on these allegations, Gluesing's claims fall within the scope of the Agreement's broad arbitration provision.

Gluesing's claims are also arbitrable because they arise out of and relate to services provided by Caremark, a CVS Specialty Pharmacy affiliate. The Agreement expressly governs "any services or goods provided … by CVS Caremark Specialty Pharmacy™ or one of its subsidiaries or affiliates." Ex. 1 to Johansson Decl. at 2. Gluesing acknowledges that CVS Specialty Pharmacy is "affiliated" with Caremark and that Caremark and CVS Specialty Pharmacy "are both within the same corporate conglomerate." *Id.* ¶¶ 1, 57; *see also Affiliate*, Black's Law Dictionary (12th ed. 2024) (defining "affiliate" as "[a] corporation that is related

to another corporation by shareholdings or other means of control"). Gluesing alleges that Wellmark "partners with Caremark for prescription drug benefits," Compl. ¶ 28, including operating the Program in which Ms. Gluesing is enrolled and which forms the basis of her claims, *id.* ¶ 38. Because services provided by an affiliate are covered by Ms. Gluesing's Agreement with CVS Specialty Pharmacy, her claims against Caremark arise from or relate to the Agreement and are therefore arbitrable for this additional, independent reason.

**C.   Both Caremark and PrudentRx Are Entitled to Invoke the Agreement's Arbitration Provision**

It is well settled that Caremark and PrudentRx can invoke the Agreement's arbitration provision even if they are not signatories to the Agreement. As an initial matter, like the issue of whether Gluesing's claims fall within the scope of the Agreement's arbitration provision, this issue relates to arbitrability and is thus properly referred to the arbitrators for decision. *See Symonds v. Credico (USA) LLC*, No. 1:20-CV-10192-ADB, 2020 WL 7075028, at *6 (D. Mass. Dec. 3, 2020) ("Accordingly, because the arbitration agreement delegates the arbitrability determination to the arbitrator, it is the arbitrator, rather than the Court, who must decide whether nonsignatories Credico and Verizon can compel Plaintiff to arbitrate her claims against them.").

In any event, equitable estoppel allows both Caremark and PrudentRx to invoke the Agreement's arbitration provision. As the First Circuit has explained, "[f]ederal courts, including this court, have relied on equitable estoppel when requiring arbitration between a signatory and a nonsignatory of an arbitration agreement." *Puerto Rico Fast Ferries LLC v. SeaTran Marine, LLC*, 102 F.4th 538, 549 (1st Cir. 2024) (citation and internal quotation marks omitted). The doctrine prevents a signatory to an arbitration agreement—like Gluesing— "from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking

to resolve in the arbitration are intertwined with the agreement that the estopped party has signed." *Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 47 (1st Cir. 2008) (collecting cases applying equitable estoppel to compel arbitration).

Gluesing's own allegations make clear that her claims against both Caremark and PrudentRx are inextricably intertwined with services provided by CVS Specialty Pharmacy under the Agreement. As explained above, Gluesing alleges that Caremark and PrudentRx violated ERISA and RICO through the Program, and that Gluesing was enrolled in the Program for a specialty medication she receives from CVS Specialty Pharmacy. Gluesing also alleges repeatedly that CVS Specialty Pharmacy operates the Program with Defendants. Compl. ¶ 1 (alleging CVS Specialty Pharmacy teams up with Defendants); *id.* ¶¶ 2, 68 (alleging CVS Specialty Pharmacy is part of alleged five-part scheme related to the Program); *id.* ¶ 9 (alleging Defendants "deployed CVS Specialty Pharmacy to help operationalize" the Program); *id.*, ¶¶ 38, 99 (alleging CVS Specialty Pharmacy "operate[s]" the Program). Reinforcing this point, Gluesing alleges that CVS Specialty Pharmacy conducts or participates in a RICO enterprise with Defendants related to the Program, and she describes CVS Specialty Pharmacy, Caremark, and PrudentRx as "co-conspirators." Compl. at ¶ 21; *see also id.* ¶ 23. Gluesing repeatedly group pleads allegations against CVS Specialty Pharmacy and Defendants. *See*, *e.g.*, *id.*, ¶¶ 38, 68, 85, 90-91, 93, 95, 99, 101. Indeed, Gluesing goes so far as to define "both 'Caremark' and "CVS Specialty Pharmacy'" to "refer to Caremark Rx LLC"—the named Defendant. *Id.* ¶ 20. In other words, Gluesing expressly attempts to use allegations against CVS Specialty Pharmacy to plead her claims against Defendant Caremark Rx LLC. Because her claims against Defendants are intertwined with services provided by CVS Specialty Pharmacy under the Agreement, Gluesing is equitably estopped from avoiding

arbitration with Defendants on the ground that they are non-signatories to her agreement with CVS Specialty Pharmacy.

Caremark and PrudentRx are also entitled to invoke the Agreement's arbitration provision as third-party beneficiaries of the Agreement. *See Steel-Rogers v. Glob. Life Sci. Sols. USA, LLC*, 624 F. Supp. 3d 10, 15 (D. Mass. 2022) ("Thus, if GLS is a third-party beneficiary of the arbitration agreement between Plaintiff and Kelly, it could compel arbitration on Plaintiff claims despite its non-signatory status."). As noted above, *see supra* Part I.B, Gluesing herself repeatedly acknowledges that Caremark is an affiliate of CVS Specialty Pharmacy, and the Agreement's arbitration provision requires arbitration of "all disputes arising out of or related to this Agreement" and furthermore defines the "Service" governed by the Agreement to include "any services or goods provided … by CVS Caremark Specialty Pharmacy™ or one of its subsidiaries or affiliates." The Agreement's arbitration provision further expressly applies to "suppliers or vendors" of CVS Specialty Pharmacy, which includes PrudentRx. Ex. 1 to Johansson Decl. at 16; Compl. ¶ 14 (alleging that PrudentRx is a "vendor"); *id.* ¶ 38 (alleging that PrudentRx "operate[s]" the Program with Caremark and CVS Specialty Pharmacy"). These provisions evince the parties' intent that the Agreement's arbitration provision benefit Caremark and PrudentRx. *See In re GlassHouse Techs., Inc.*, 604 B.R. 600, 615 (Bankr. D. Mass. 2019), *aff'd*, 654 B.R. 190 (D. Mass. 2023) ("While a third-party beneficiary does not have to establish that it is explicitly named in the contract, New York law generally requires that the parties' intent to benefit a third-party be gleaned from the face of the contract."). Accordingly, Caremark and PrudentRx are also entitled to invoke the Agreement's arbitration provision as third-party beneficiaries.

22

## II.    Gluesing Fails to State an ERISA Claim

In Count I, Gluesing brings a claim for injunctive relief, attorney's fees, and costs under ERISA's "catchall" provision, 29 U.S.C. § 1132(a)(3).  "The Supreme Court has interpreted § 1132(a)(3) as a safety net, offering appropriate equitable relief for injuries caused by violations that 29 U.S.C. § 1132 does not elsewhere adequately remedy." *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 110 (1st Cir. 2002) (citation and quotation marks omitted, alteration adopted).  Gluesing alleges that Defendants violated ERISA through their involvement with the Program.  Compl. ¶¶ 161-163.

"Both fiduciaries and non-fiduciaries can incur liability under § 1132(a)(3)," but "actions against non-fiduciaries must be based on the non-fiduciary's participation in a breach of fiduciary duty."  *Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Massachusetts*, No. CV 21-10523-FDS, 2022 WL 952247, at *16 (D. Mass. Mar. 30, 2022), *aff'd*, 66 F.4th 307 (1st Cir. 2023).  Gluesing has not sued her health plan (Wellmark) or alleged that Wellmark breached a fiduciary duty.  Because § 1132(a)(3) requires that a fiduciary commit a breach, Count I rises and falls on Gluesing's ability to plead that Caremark or PrudentRx was an ERISA fiduciary and breached a duty.  *See id.*; *see also cf. Martinez v. Sun Life Assurance Co. of Canada*, 948 F.3d 62, 72 (1st Cir. 2020) ("Nor does the language of the SPD provide any basis for a claim that the Athens Group breached a fiduciary duty, such that Sun Life could be liable for participating in that breach as a co-fiduciary or a non-fiduciary.").

Count I fails as a matter of law because Gluesing has failed to plead that Defendants qualify as ERISA fiduciaries.  Gluesing has not alleged that Defendants were named as fiduciaries in her health plan or that Defendants exercised discretion over her plan.  Case law confirms that third-party service providers, such as Defendants, are generally not ERISA

23

fiduciaries. ████████████████████████████████████████████

██████████████  *See* Part II.A, *infra*.

Rather than address Defendants' involvement in her plan, Gluesing attempts to plead fiduciary status through five purported "fiduciary acts."  But labelling allegations "fiduciary acts" does not make them so.  ███████████████████████████████

████████████████████████████████████████████████

██████████████████████████  Her efforts to plead fiduciary status and breach fail for many other reasons set forth below.  *See* Part II.B, *infra*.

A. **Gluesing Fails to Plead that Caremark or PrudentRx Qualifies as an ERISA Fiduciary**

"In every case charging breach of ERISA fiduciary duty, the threshold question" is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). ERISA recognizes two types of fiduciaries—named fiduciaries and functional fiduciaries. *Beddall*, 137 F.3d at 18.  Count I should be dismissed because Gluesing has not pled facts supporting that Defendants qualify as either type of fiduciary.

Gluesing fails to allege that Caremark or PrudentRx was a named fiduciary of her health plan.  A "named fiduciary" includes "those individuals listed as fiduciaries in the plan documents or those who are otherwise identified as fiduciaries pursuant to a plan-specified procedure."  *Beddall*, 137 F.3d at 18; 29 U.S.C. § 1102(a) (defining named fiduciary). Gluesing does not allege that her plan documents or a plan-specified procedure identifies Defendants as fiduciaries.  Her failure to make such allegations forecloses any argument that Defendants are named fiduciaries.  *See Fletcher v. ConvergEx Grp. LLC*, 388 F. Supp. 3d 293,

24

298 (S.D.N.Y. 2019) (focusing analysis on functional fiduciary status when plaintiff makes no named-fiduciary allegations).

Likewise, Gluesing fails to plead facts supporting that Caremark or PrudentRx was a functional fiduciary. A functional fiduciary "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). As the First Circuit has explained, "[t]he key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets (such as by rendering investment advice)." *Beddall*, 137 F.3d at 18. Here, Gluesing never alleges that Defendants exercised discretion or control over her plan; her complaint says nothing substantive about her plan in this regard. *See* Compl. ¶¶ 17, 28.

Gluesing does not and cannot allege functional fiduciary status because PBMs, like Caremark, or other third-party service providers, like PrudentRx, are generally not functional fiduciaries. ERISA "is not designed to regulate or afford remedies against entities that provide services to plans" such as PBMs or service providers. *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 305 (1st Cir. 2005) (per curiam) (citation and quotation marks omitted). A health plan determines its benefits and the terms on which they are offered to plan members. Third-party service providers—PBMs like Caremark and vendors like PrudentRx—help administratively implement the plan on terms that the health plan establishes. The structure of a third-party service provider's relationship with a plan has led many courts, including the First Circuit, to conclude that such service providers, including "PBMs[,] do not exercise

25

discretionary authority or control in the management and administration of the plan" and are therefore not fiduciaries under ERISA. *Rowe*, 429 F.3d at 301.

These decisions are correct. A third-party service provider negotiates with a plan and then implements the resulting contractual terms. But "[a] service provider owes no fiduciary duty to a plan with respect to the terms of its service agreement if the plan trustee exercised final authority in deciding whether to accept or reject those terms." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 293 (3d Cir. 2014) (citation and quotation marks omitted). And implementing the agreed-upon terms does not qualify as a fiduciary function. "[C]ourts typically find discretion to be lacking when a contract merely requires adherence to a specific contract term even when adhering to that term requires expertise in complex subject matter." *Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Massachusetts*, 66 F.4th 307, 319 (1st Cir. 2023) (citation and quotation marks omitted, alteration adopted).



" Ex. 2 to Boeshart Decl., Pharmacy Benefit Services Agreement, § 38.11.

ERISA § 3.21(a), which is codified at 29 U.S.C. § 1002(21)(A), defines a "functional fiduciary." *Beddall*, 137 F.3d at 18.



" Ex. 6 to Boeshart Decl., Vendor Election Form at 7.

"Relying on similar express contract terms limiting the discretionary authority of the PBM, Courts have consistently determined that the PBM is not a functional fiduciary." *Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 995 (N.D. Cal. 2018), *aff'd in relevant part, vacated in part on other grounds, and remanded sub nom.*, *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020) (vacating "dismissal of Does' ACA claim and UCL claim" but affirming "the district court's dismissal of all other claims"); *see also*, *e.g.*, *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 474–77 (7th Cir. 2007) (holding Caremark was not a fiduciary when "[t]he express language of the contracts contradicts this characterization of Caremark's authority over these [disputed] programs"); *Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 670 (M.D. Tenn. 2007) (determining Caremark was not a fiduciary when agreement made clear that plan sponsor "retained exclusive control, and all discretionary

---

[8] ████████████████████████████████████████████

authority, over the management and administration of the" plan); *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1334 (N.D. Ala. 2004) ("[T]he court does not find that Caremark is an ERISA fiduciary under the PBM Agreement."), *aff'd,* 461 F.3d 1325 (11th Cir. 2006).

In sum, Count I fails as a matter of law because Gluesing has failed to plead that either Defendant qualifies as an ERISA fiduciary. She has not alleged that Defendants are named fiduciaries or that Defendants exercise discretion over her plan. ██████████████

████████████████████████████████████████████████████████████████

████████

### B.      Gluesing's Alleged "Fiduciary Acts" Do Not Show that Defendants Are ERISA Fiduciaries

Gluesing's complaint is void of any factual allegations about how Defendants exercised discretion or control over her plan. Instead, in an erroneous effort to show fiduciary status, Gluesing concludes that "Defendants Caremark and PrudentRx have acted as fiduciaries of the ERISA plans they administer," and she enumerates five purported "fiduciary acts" underlying Count I. *See* Compl. ¶ 161. These allegations do not rescue Count I.

Gluesing's bare assertion that Caremark and PrudentRx "have acted as fiduciaries" counts for nothing on a motion to dismiss. "In determining whether allegations cross the plausibility threshold, an inquiring court need not give weight to bare conclusions, unembellished by pertinent facts." *Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012). Gluesing cannot state an ERISA claim by labelling Defendants fiduciaries.

Gluesing's five enumerated "fiduciary acts" fare no better. Three such acts relate to Program features that Defendants allegedly implemented or caused plans to implement. Compl. ¶ 161(a), (c), (e). The remaining two "fiduciary acts" concern allegations about

Defendants instructing plan members about copay assistance programs and administering benefits through an alleged "sham" insurance plan.  *Id.* ¶ 161(b), (d).  Even taken as true, none of these five acts would render Defendants fiduciaries under ERISA, let alone breach a fiduciary duty.

### 1.    The Program Features

For three of her "fiduciary acts," Gluesing alleges that Caremark and PrudentRx acted as fiduciaries in not counting manufacturer assistance toward the ACA's annual cost-sharing limit, in setting a 30% cost-share obligation for specialty drugs, and in paying "a portion of the cost-sharing drug manufacturers require patients to pay to be eligible for manufacturer patient co-pay assistance."  Compl. ¶ 161(a), (c), (e); *see also id.* ¶ 90 (alleging Caremark and PrudentRx charge certain members "inflated 30% coinsurance on specialty medications eligible for the Program after satisfying any applicable plan deductible").



[9] Ex. 6 to Boeshart Decl., Vendor Election Form at 6.

[10] *Id.* at 3.

---

[9] Ex. 6 to Boeshart Decl., Vendor Election Form at 6 ("                                        ").

[10] Ex. 6 to Boeshart Decl., Vendor Election Form at 4 ("                                        ").

███████████████████████████████████    ████████████████████████

███████████████████████████████"[11] *Id.* at 3-4.

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████    Compl.

¶¶ 161(a), 161(c), 161(e).  "Numerous courts have explained that when a service provider or PBM acts pursuant to the terms of a contract, it does not exercise discretionary authority and does not act as an ERISA fiduciary."  *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 679 (S.D.N.Y. 2018), *aff'd sub nom.*, *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020); *In re UnitedHealth Grp. PBM Litig.*, No. 16-CV-3352, 2017 WL 6512222, at *8 (D. Minn. Dec. 19, 2017).  "There can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms."  *Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 210 (D. Mass. 2002), *aff'd,* 316 F.3d 290 (1st Cir. 2003).  Thus,

████████████████████████████████████████████████████████████████████████

██████████████████████████████, Defendants would not have acted as fiduciaries.  What is more, functions such as counting assistance and making payments according to a plan design are by their nature ministerial functions to which no fiduciary duty attaches.  *See Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1028 (9th Cir. 2021) (holding that calculating benefits is a ministerial function without fiduciary duties).

---

[11] Ex. 6 to Boeshart Decl., Vendor Election Form at 4-5 ("████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████").

30

Furthermore, Gluesing does not explain how Defendants "caused" plans to implement the Program. Her complaint suggests that Defendants could be responsible for recommending that plans, including Wellmark, adopt or implement the Program. Compl. ¶¶ 83, 176. ERISA does not, however, "mandate what kind of benefits employers must provide." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). "Decisions about the content of a plan are not themselves fiduciary acts." *Pegram*, 530 U.S. at 226; *Moeckel*, 622 F. Supp. 2d at 684 ("[P]lan design decision[s] are immune from fiduciary liability."). Wellmark "exercised final authority in deciding whether to accept or reject" the Program. *Santomenno ex rel. John Hancock Tr.*, 768 F.3d at 293. "Given that this scheme was the very deal for which [Wellmark] bargained at arms' length, Caremark owed no fiduciary duty in this regard." *Chicago Dist. Council of Carpenters Welfare Fund*, 474 F.3d at 473. Defendants did not act as fiduciaries by negotiating the Program with Wellmark or any other health plan. *See* 29 C.F.R. § 2509.75-8 (D-2(11)) (noting that one does not become a plan fiduciary by making recommendations to others for decisions with respect to plan administration).

Finally, even had Defendants acted as fiduciaries with respect to the features of the Program, Gluesing's theory of fiduciary breach is fundamentally flawed and would not state a claim. She asserts that Defendants violated ERISA because ERISA incorporates the ACA, and the Program violates the ACA's requirements with respect to annual cost-sharing limits. Compl. ¶ 163(a). Gluesing is incorrect that the Program violates the ACA.[12] But there is a

---

[12] Gluesing posits that the Program violates the ACA by not counting copays toward annual cost-sharing limits, either from members or from copay assistance programs. ███████████████████ ████████████████████ Ex. 6 to Boeshart Decl., Vendor Election Form at 4. Her contrary allegation is entitled to no weight. As for manufacturer assistance, since 2019 and now spanning three presidential administrations, the federal agencies responsible for the ACA "will not initiate an enforcement action if an issuer of group or individual health insurance coverage or a group health plan

bigger fly in the ointment:  ERISA only incorporates the ACA as "to *group health plans*, and *health insurance issuers* providing health insurance coverage in connection with group health plans."  29 U.S.C. § 1185d(a)(1) (emphasis added).[13]  "Group health plan" and "health insurance issuer" are both defined terms under ERISA.  29 U.S.C. § 1191b(a)(1) (defining "group health plan"); *id.*, § 1191b(b)(2) (defining "health insurance issuer").  Gluesing does not (and could not) allege that either Caremark or PrudentRx so qualifies.  As a result, even if Defendants were fiduciaries (which they are not), Gluesing's allegations that Defendants violated the ACA and ERISA through the Program would fail as a matter of law.  She has, in other words, alleged neither fiduciary status nor breach.

### 2. Alleged Deceptive Instructions and Insurance Plan

For her final two "fiduciary acts," Gluesing alleges that Defendants provided deceptive instructions to plan members about obtaining manufacturer copay assistance and administered a "sham insurance plan."  Compl. ¶ 161(b), (d).  These allegations fail for at least three fundamental reasons and cannot support Count I.

*First*, even taking Gluesing's allegations as true, providing instructions and administering claims are not fiduciary functions under ERISA.  ▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

 Ex. 6 to Boeshart Decl., Vendor Election Form at 6.[14] ▇▇▇▇▇▇

---

excludes the value of drug manufacturers' coupons from the annual limitation on cost sharing," FAQs Part 40, *supra* at 3.

[13] 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. 300gg et seq.] (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart.").

[14] Ex. 6 to Boeshart Decl., Vendor Election Form at 6 ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇").

██████████████████████████████████    *See In re Express Scripts/Anthem ERISA*

*Litig.*, 285 F. Supp. 3d at 679; *Alves*, 204 F. Supp. 2d at 210.  The same is true of the allegations

regarding a "sham insurance plan."    "The processing of claims is the kind of 'purely

ministerial function' that does not give rise to fiduciary duties when performed by a third

party on a contract basis." *Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 675 (8th Cir. 1999);

*Moeckel*, 622 F. Supp. 2d at 689 (listing "claims processing" among "ministerial services"

"Caremark would provide"); *In re UnitedHealth Grp. PBM Litig.*, 2017 WL 6512222, at *9 (D.

Minn. Dec. 19, 2017) (same as to OptumRx).   Gluesing's allegation that Defendants

"administer[] and pay[] claims for pharmacy benefits through a sham insurance plan"—even

if true—would involve ministerial functions.  *See* Compl. ¶ 161(d).

   *Second*, even if contacting participants about copay assistance programs was a fiduciary

act, *see id.* ¶ 161(b), Gluesing's allegations related to a breach are entirely conclusory.  Her

allegations that Defendants "misrepresent[ed] or omit[ed] material facts" when "instructing

plan participants . . . on how to obtain patient copay assistance" are entirely conclusory.  *See*

Compl. ¶¶ 161(b), 163(b).  Gluesing alleges that PrudentRx—███████████████████

█████████████—contacts members of plans enrolled in the Program about obtaining copay

assistance.  *Id.* ¶ 111.   Gluesing then adds, "on information and belief" and without

mentioning any communications with her personally, that PrudentRx "tell[s] patients exactly

what to say" to enroll in manufacturers' copay assistance programs.  *Id.*  That is the only

putative support for her allegation that Defendants acted as fiduciaries and breached their

duties in providing instructions to plan members.  *Id.* ¶¶ 161(b), 163(b).

   These allegations fall short of stating a claim.   Gluesing does not allege that

Defendants made any misrepresentations to her personally about obtaining copay assistance.

33

And she cannot rely solely on alleged misrepresentations or omissions to others: "Named plaintiffs in a class action must be able to make out an individual claim." *Kenney v. State St. Corp.*, 754 F. Supp. 2d 288, 292 (D. Mass. 2010) (granting summary judgment on ERISA misrepresentation claim when named plaintiff could not show reliance). Indeed, while Gluesing alleges she takes Dupixent, *manufactured by Sanofi and Regeneron*, Compl. ¶ 17, Gluesing complains that *other manufacturers*, such as AbbVie and Eli Lilly & Company, change their copay assistance programs for a "maximizer," Compl. ¶ 110. Gluesing does not allege any specific facts about how any conduct related to prescription drugs from these other manufacturers, or any "maximizer" they may offer, could support her personal claim. In particular, she does not provide any well-pleaded facts showing a misrepresentation or omission to her at all, let alone plead any such acts with particularity. "Such conclusory statements do not support a claim for material misrepresentations" under ERISA. *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1350 (N.D. Ga. 2010) (dismissing breach of fiduciary claim for conclusory pleading); *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 772 (E.D. Ky. 2010) (same).

Third, even if Gluesing's allegations gave rise to fiduciary status and even if she had provided plausible factual support for any supposed deception, Gluesing lacks standing to seek an injunction (her only form of relief sought in Count I) for the allegedly deceptive instructions and "sham" insurance plan. Her complaint alleges that Defendants deceived drug manufacturers into providing copay assistance to individuals who are ineligible for such assistance. Compl. ¶¶ 109-11, 186. Even accepting Gluesing's allegations as true, her requested injunction—insofar as it addresses obtaining copay assistance or processing claims

34

through a "sham" insurance plan—would lower the amount of disbursements from drug manufacturers' copay assistance programs. *Id.* ¶ 165.

Such an injunction would provide no relief to Gluesing. She claims to have been "forced to incur excess healthcare expenses" and to have been "deprived of the opportunity to avail" herself "of the patient copay assistance programs' funding." Compl. ¶¶ 17, 186. ██

██████████████████████████████████████    ██████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████ " Ex. 6

to Boeshart Decl., Vendor Election Form at 6. The amount of copay assistance that a drug manufacturer offers therefore makes no difference to whether a member reaches their ACA cost-sharing limit and stops incurring out-of-pocket expenses. Indeed, Gluesing herself distinguishes between the alleged injury to drug manufacturers and the alleged injury to plan members. Compl. ¶ 187. As such, an injunction prohibiting Defendants from providing information about copay assistance or from administering an insurance plan would not address Gluesing's alleged financial injuries, and "[a] plaintiff who is not likely to benefit from injunctive relief lacks standing to pursue it." *Colligan v. Mary Hitchcock Mem'l Hosp.*, No. 16-CV-513-JD, 2018 WL 6607706, at *6 (D.N.H. Dec. 17, 2018); *accord Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023) ("Because the plaintiffs have not shown that their requested injunction would likely redress their alleged injuries, they lack standing to pursue that form of relief."). Thus, for any or all of these reasons, Gluesing's allegations related to providing information about copay assistance and the "sham insurance plan" cannot support Count I.

### III.    Plaintiff's RICO Claim Fails as a Matter of Law

Gluesing alleges that Defendants have violated the civil RICO statute, 18 U.S.C. § 1964. Compl. ¶¶ 167–89.   Because the "very pendency of a RICO suit can be stigmatizing," "particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants."  *Miranda*, 948 F.2d at 44.  RICO plaintiffs must do more than simply "assert[] an inequity attributable to a defendant's conduct and tack[] on the self-serving conclusion that the conduct amounted to racketeering."  *Id.* Gluesing must instead adequately allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."   *Lerner v. Colman*, 26 F.4th 71, 77 (1st Cir. 2022) (citation and quotation marks omitted); *MSP Recovery Claims, Series LLC v. Lundbeck, LLC*, __F.4th__, 2025 WL 610305, at *10 (4th Cir. Feb. 26, 2025) (affirming dismissal of RICO claim based on alleged kickbacks from co-pay assistance programs).  Gluesing must also allege facts showing that the alleged RICO conduct was both the but for and the proximate cause of her harm.  *Lerner*, 26 F.4th at 77 (citing 18 U.S.C. § 1964(c)).

Gluesing's RICO claim falls short for three reasons.  First, she has not alleged facts that support RICO standing.  Second, she has failed to adequately allege that either Caremark or PrudentRx conducted the affairs of an enterprise.  And third, she fails to sufficiently plead *any* acts of racketeering activity.  Gluesing's RICO claim should be dismissed for each such reason.

#### A.    Gluesing Lacks Standing to Assert Her RICO Claim

"[T]o avert dismissal under Rule 12(b)(6), civil RICO complaint must state facts showing a causal nexus between racketeering activity and the harm alleged; the injury itself must be the result of a predicate act."  *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12,

17 (1st Cir. 2000) (alteration adopted, citation and quotation marks omitted). Standing for a civil RICO claim requires "some direct relation between the injury asserted and the injurious conduct alleged." *George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 393 F.3d 36, 51 (1st Cir. 2004) (citation omitted). Gluesing must allege that Defendants' "specified acts of racketeering" caused her injuries. *Id.*; *accord Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 13 (1st Cir. 2007) (A RICO plaintiff "must show not only that [the predicate act] occurred, but that they suffered a direct injury as a result of it."). "[I]ndirect and derivative injuries are insufficient to have standing in a civil RICO claim." *George Lussier Enters.*, 393 F.3d at 51.

Gluesing alleges two purported harms: "(i) harm to patient copay assistance programs [*i.e.*, manufacturers] in the form of excessive disbursements from the programs; and (ii) harm to patients that are deprived of the opportunity to avail themselves of the patient copay assistance programs' funding and thus forced to incur additional healthcare expenses." Compl. ¶ 186. She then further distinguishes between alleged harm to drug manufacturers' copay assistance programs and alleged harm to plan members. "This second category of harm is experienced directly by targeted patients like Ms. Gluesing." *Id.* ¶ 187.

Gluesing's alleged harm is thus increased out-of-pocket medical expenses from the Program. *See, e.g.*, Compl. ¶¶ 13, 31, 186. She alleges that "Wellmark participates in the PrudentRx Program and enrolled Ms. Gluesing in the Program." *Id.* ¶ 17. According to Gluesing, her alleged increased expenses arose because the Program does not count payments for her specialty medication toward her annual cost-sharing limit under the ACA. Compl. ¶¶ 17, 137, 185. Gluesing has not alleged that any mail or wire fraud or Travel Act violations caused her participation in the Program, only that Wellmark enrolled her.

Gluesing's alleged injury is not caused by the Complaint's "specified acts of racketeering." *George Lussier Enters., Inc.*, 393 F.3d at 51 (1st Cir. 2004). The Enterprise's alleged racketeering involved supposed efforts to dupe copay assistance programs "into disbursing patient copay assistance for ineligible targeted patients." Compl. ¶ 15; *accord, e.g.*, *id.* ¶¶ 100, 106–08, 179. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████ *See* Ex. 6 to Boeshart Decl., Vendor Election Form at 6; *cf. Bastian v. Petren Res. Corp.*, 892 F.2d 680, 686 (7th Cir. 1990) ("If the plaintiffs would have lost their shirts . . . regardless of the defendants' violations of RICO, they have incurred no loss for which RICO provides a remedy."). A plain reading of the Complaint thus contradicts Gluesing's conclusory allegation that the alleged Enterprise has caused her injury. *See* Compl. ¶ 186. Thus, Gluesing lacks standing to assert her RICO claim. *See Boston Cab Dispatch, Inc. v. Uber Tech., Inc.*, No. 13-10769-NMG, 2015 WL 314131, at *8 (D. Mass. Jan. 26, 2015) (dismissing civil RICO claim because plaintiff failed to allege that racketeering activity "caused them direct injury").[15]

Gluesing further alleges that the Enterprise has harmed "patient copay assistance programs" by forcing "excessive disbursements from the programs." Compl. ¶ 186. But, of course, that is not an injury to her that could support standing for her RICO claim. And no copay assistance program is a plaintiff in this lawsuit. Regardless, Gluesing lacks standing to assert a claim predicated on injury to the assistance programs. *See, e.g.*, *CE Design Ltd. v. Am.*

---

[15] *Accord Shirokov v. Dunlap, Grubb & Waker, PLLC*, No. 10-12043-GAO, 2012 WL 1065578, at *29 (D. Mass. Mar. 27, 2012) (dismissing civil RICO claim for lack of standing when plaintiff did "not allege[] an injury caused by racketeering activity").

*Economy Ins. Co.*, 755 F.3d 39, 44 (1st Cir. 2014) ("generally, a plaintiff can only assert claims premised on his or her own legal rights, not those of third parties"). The Court should thus disregard the allegations related to the interests of copay assistance programs and dismiss the RICO claim based on Gluesing's lack of standing to pursue her RICO claim.

### B. Plaintiff Fails to Adequately Allege the Existence of and Participation in the Conduct of an Enterprise

The RICO claim also fails based on the lack of sufficient allegations relating to the existence of the enterprise and its operation. RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). And § 1962(c) makes it "unlawful . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs[.]" RICO's mandate that a person "conduct or participate" in an enterprise's affairs "requires an element of direction." *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993).

Gluesing's enterprise theory is that Defendants have joined together to form an "association-in-fact" enterprise. Compl. ¶ 170. "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). While the association's structure need not be formal, its "various associates" must "function as a continuing unit." *United States v. Cruz–Ramos*, 987 F.3d 27, 36 (1st Cir. 2021) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "[I]t is not sufficient that several organized, ongoing groups come together for one concerted action, unless those groups can also be shown to constitute a larger unit, over and above their separate structures and operations." *Ryan v. Newark Grp.*, 2024 WL

39

4815478, at *22 (D. Mass. Nov. 18, 2024) (citation omitted); *accord Turkette*, 452 U.S. at 580 (enterprise must be an entity "separate and apart from the pattern of activity in which it engages").

Gluesing's Complaint fails to meet these standards. First, courts across the country consistently hold that routine business relationships are insufficient to establish a RICO enterprise. *See, e.g.*, *Smith v, Nationstar Mortg.*, No. 1:17-cv-1483, 2017 WL 6594009, at *4 (N.D. Ohio Dec. 21, 2017).[16] Though Gluesing also has not sufficiently alleged fraud, *see* Part III.C.1, *infra*, an enterprise is inadequately pled "even if the related businesses *have* conspired to commit fraud" unless Gluesing can also show that "they are organized in such a way as to enable them to function as a racketeering organization for other purposes." *Id.* (emphasis added).

PrudentRx is a third-party vendor that assists plan beneficiaries with enrolling in co-pay programs. *See* Compl. ¶ 18. Caremark provides pharmacy benefit services. *Id.* ¶ 19. The crux of Gluesing's allegations are not only that these entities worked closely together (as these types of businesses do in the course of normal operations), but that they ostensibly did so with a fraudulent purpose. *See* Compl. ¶¶ 170–77. Fraudulent purpose notwithstanding,[17] however, this amounts to nothing "more substantial than a routine contract[ual]" relationship between the parties. *Gomez v. Guthy–Renker, LLC*, No. 14-cv-1425, 2015 WL 4270042, at *11

---

[16] *See also, e.g.*, *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) (dismissing RICO claim and holding that "[s]imply characterizing routine commercial dealing as a RICO enterprise is not enough."); *A & B Campbell Family v. Chesakpeake Energy Corp.*, No. 3:15-cv-340, 2024 WL 4009633, at *9 (M.D. Pa. Aug. 30, 2024) ("normal business relationships, without more, are insufficient to support an association-in-fact enterprise" (citation omitted)).

[17] *See Smith*, 2017 WL 6594009, at *4; *VanDenBroeck v. CommonPoint Motg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000) ("simply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes"), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 646 (2008).

(C.D. Cal. Jul. 13, 2015); *id.* at *10 (collecting cases showing that "a routine contractual relationship between two parties is not sufficiently distinct from the contracting parties themselves").  Gluesing's allegations are insufficient because they at best "demonstrate that the parties are associated in a manner directly related to their own primary business activities." *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. Oct. 24, 2016); *id.* at 1056 (collecting examples of similarly deficient RICO allegations).  And Gluesing has alleged no "facts dispelling" the more-plausible notion that these commercially-tied-together "parties engaged in independent behavior for their own respective economic gain."  *See Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1282 (N.D. Ala. July 29, 2011).  Gluesing has therefore failed to adequately allege the existence of a RICO enterprise.

Second, Gluesing does not adequately allege that either Caremark or PrudentRx conducted the affairs of an enterprise separate and apart from the alleged pattern of racketeering activity.  *Friendly Hotel Boutique Corp. v. ME & A Capital, LLC*, No. 11-1709, 2012 WL 4062795, at *2 (D.P.R. Sept. 14, 2012) ("besides alleging the existence of the enterprise, the plaintiff must also set forth the relationship *each individual defendant has with that enterprise*").

1.    Gluesing Fails to Allege that Caremark Conducted the Affairs of an Enterprise

At most, Gluesing's allegations show Caremark "carrying out ordinary commercial activities." *Jimenez v. Serv. Emps. Int'l Union Local 775*, 590 F. Supp. 3d 1349, 1362 (E.D. Wash. 2022).  Gluesing alleges that PrudentRx "recruited Caremark to help operationalize the [Program]"—common conduct in the ordinary course of business.  Compl. ¶ 173.  And once Caremark engaged with PrudentRx, the allegations suggest Caremark's conduct was remarkably *conventional*: it "market[ed]" the Program and "enter[ed] into agreements with

41

participating health plans sponsors"; it provided "prescription claims data" to help PrudentRx identify patients it wanted in the Program; it "aid[ed] PrudentRx in preparing reports to be sent to participating health plans"; and it processed and disbursed payment as the parties had presumably agreed. *Id.* ¶ 174. None of this conduct suggests the existence of—much less Caremark *directing the affairs of*—a RICO enterprise. Gluesing's allegations are instead "more consistent with [Caremark] conducting its own business initiatives." *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1347 (N.D. Ga. 2017).

To the extent Gluesing alleges that the conduct of "co-conspirator" "CVS Specialty Pharmacy" should be attributed to Caremark, the Court should reject that theory because the specialty pharmacies referenced are separate legal entities not parties to this lawsuit. Gluesing admits the pharmacies' separate legal status in her Complaint. Compl. ¶ 20 (noting that the CVS specialty pharmacies are "one or more direct and indirect subsidiaries" of Caremark). "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Gluesing has alleged no exception to this rule on this count; this Court should not attribute RICO allegations related to "CVS Specialty Pharmacy" to Caremark. Even if the Court *could* weigh the conduct of "CVS Specialty Pharmacy" against Caremark, the allegations still fail for the reasons identified above: they show at most corporations pursuing their business interests. *See Parm*, 242 F. Supp. 3d at 1347.

Gluesing's failure to allege that Caremark exerted control over an enterprise separate and apart from the alleged pattern of racketeering activity thus merits dismissal.

        2.      <u>Gluesing Fails to Allege that PrudentRx Conducted the Affairs of an Enterprise</u>

Plaintiff failed to plausibly allege PrudentRx conducted the affairs of any enterprise. Gluesing alleges an extensive list of conduct that she believes shows that PrudentRx "conducts or participates in the conduct of the affairs of the [enterprise]." Compl. ¶ 173. But these allegations merely lay out PrudentRx's operations as a business—albeit dressed up menacingly and conclusory in a way to suggest fraud. Gluesing's allegations are "more consistent with [PrudentRx] conducting its own business initiatives," *Parm*, 242 F. Supp. 3d at 1347, rather than PrudentRx's conducting the operations of an enterprise separate and apart from its normal business operations.

## C.    Gluesing Has Not Pled a "Pattern of Racketeering Activity"

RICO's "pattern" requirement requires allegations that each defendant committed "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5); *cf. Aetna Cas. Co. v. P B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994) (civil RICO requires "that each defendant committed two acts of racketeering activity"), *abrogation on other grounds recognized in United States v. Velazquez–Fontanez*, 6 F.4th 205, 213 n.2 (1st Cir. 2021). Gluesing must also allege facts that satisfy the "continuity plus relationship" standard: that "the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." *Giuliano v. Fulton*, 399 F.3d 381, 386 (1st Cir. 2005).

Among other deficiencies, Gluesing has failed to adequately allege under Rule 9(b)'s heightened pleading standard that Defendants have each committed the two requisite predicate acts. In fact, Gluesing has not sufficiently alleged a single predicate among both Defendants.

1.      Gluesing Fails to Adequately Allege Mail and Wire Fraud

"To state a claim for mail or wire fraud, [Gluesing] must plead: (1) a scheme to defraud using false pretenses, (2) the defendant's knowing and willing participation in the scheme with the intent to defraud, and (3) the use of the mails or wires in furtherance of that scheme." *Humana Inc. v. Biogen, Inc.*, 126 F.4th 94, 103 (1st Cir. 2025). Further, the "object of the fraud . . . must be property in the hands of the victim." *Cleveland v. United States,* 531 U.S. 12, 15 (2000). Under "Rule 9(b), a plaintiff who alleges fraud must identify 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *MSP Recovery Claims, Series LLC*, 2025 WL 610305, at *8; *accord Humana*, 126 F.4th at 104 (stating the particularity requires, among other things, "who made [statements] to whom" and "where and when they were made").

"RICO claims premised on mail or wire fraud must be particularly scrutinized because of the ubiquity of the use of wires and mails and the ease with which isolated frauds can be pleaded as patterns." *Lerner*, 26 F.4th at 85. The First Circuit has "repeatedly held that conclusory allegations of mail and wire fraud with no description of any time, place or content of the communications do not suffice" under Rule 9(b). *Humana*, 126 F.4th at 107 (citations and quotation marks omitted) (alteration adopted). Put another way, a "generalized allegation" that "does not plead specific instances of mail or wire fraud . . . does not satisfy Rule 9(b)'s particularity requirement." *Id.*

Gluesing's allegations related to mail and wire fraud do not meet Rule 9(b)'s standard. The Complaint makes only passing references to Defendants' use of mail or wires. *See* Compl. ¶¶ 15, 86, 87, 89, 150, 159, 173–175. Indeed, the Complaint contains no reference to the specific time, place, content, or method of any unique communication with or among the

44

Defendants. *Humana*, 126 F.4th at 107. Gluesing did not even allege any actual contact between her and the Defendants—contact that must have happened if Defendants engaged in the purported "scheme." *See, e.g.*, Compl. ¶¶ 85–88, 173–75 (alleging that the "scheme" involves a significant amount of direct contact with patients in efforts to defraud copay assistance programs). As the First Circuit reiterated just weeks ago, this is simply not enough. *See Humana*, 126 F.4th at 108 (dismissing claims without discovery when plaintiff "should have known the details of the communications with its own pharmacy"). And Gluesing fails to identify the time, place, content, or specific representations allegedly made to unknown third parties. *See* Compl. ¶ 111. Given the strictures of Rule 9(b), the Court ought not "imply[] that a RICO claim *could have* been made out with specificity." *Cordero–Hernandez v. Hernandez–Ballesteros*, 449 F.3d 240, 244 n.3 (1st Cir. 2006) (emphasis added).

Because the Complaint fails to "plead with specificity when the [alleged conduct] occurred, where they took place, or what they contained," the Court should hold that Gluesing has failed to allege any mail or wire-fraud predicates. *Humana*, 126 F.4th at 105 (citation and quotation marks omitted); *accord George v. Nat'l Water Main Cleaning Co.*, 2011 WL 841226, at *12 (D. Mass. Mar. 23, 2011) (dismissing RICO claim where mail-fraud predicates were not sufficiently alleged).

Alternatively, Plaintiff's mail- and wire-fraud predicates fail because she has not alleged that her harm—unspecified increased expenses—were the "object of" any fraudulent scheme. Of course, the Complaint contains vague, conclusory allegations suggesting that one of Defendants' "objectives" was to "force targeted patients to shoulder an excessive amount of their healthcare costs." *E.g.*, Compl. ¶ 127. But Gluesing does not allege that Defendants profited from her excess payments; only that Defendants "profit[ed] by diverting patient

45

copay assistance funds." *E.g., id.* ¶ 172. And copay assistance funds are not "property in the hands of the victim." *Cleveland,* 531 U.S. at 15-16. Because there are no allegations that suggest *Defendants* benefited from Gluesing's increased costs, there is no basis to conclude that the "object of" any mail and wire fraud—even assuming it were sufficiently pled—was to obtain *Gluesing's* money. These alleged predicates cannot therefore support Gluesing's RICO claim. *See Tymoshenko v. Firtash*, 2015 WL 5505841, at *5 (S.D.N.Y. Sept. 18, 2015).

### 2. Gluesing Fails to Adequately Allege a Violation of the Travel Act

The elements of a § 1952 claim are: (1) "interstate travel or the use of an interstate facility"; (2) "with the intent to promote, manage, establish, carry on, or facilitate an unlawful activity"; and (3) "followed by performance or attempted performance of acts in furtherance of the unlawful activity." *United States v. Woodward*, 149 F.3d 46, 65 (1st Cir. 1998). "Unlawful activity" is in turn statutorily defined as (1) any business involving gambling, liquor, narcotics, or prostitution offenses; (2) extortion, bribery, or arson; or (3) money laundering or other violations of other specific violations of laws governing monetary instrument transactions. *See* 18 U.S.C. § 1952(b).

Far from alleging her § 1952 claim with the particularity required in this case, Gluesing has not alleged a *single* instance of unlawful activity with the specificity Rule 9(b) requires. To be sure, Plaintiff alleges that Defendants' "pattern [of racketeering activity] includes . . . travel in interstate and foreign commerce in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952, as described above." Compl. ¶ 177. But Gluesing does not explain what conduct "described above" satisfies the elements of § 1952. And the complaint contains no other reference to "travel"—whether "in interstate and foreign commerce" or otherwise.

46

Gluesing's allegations thus plainly fail to state a predicate violation of § 1952 with the specificity Rule 9(b) requires. *See Saunders v. First Magnus Fin. Corp.*, 2018 WL 3432721, at *6–*7 (D.N.H. July 16, 2018).

*    *    *

"It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." *Feinstein v. Resol. Tr. Corp.*, 942 F.2d 34, 42 (1st Cir. 1991). Nor is it proper under Rule 9(b) to "file suit first, and subsequently to search for a cause of action." *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985) (citation omitted). Because Gluesing has not done enough to allege the predicates underlying the alleged scheme, the existence and Caremark's direction of a RICO enterprise, or that she is harmed by the alleged enterprise, her RICO claim must be dismissed.

## CONCLUSION

For these reasons, this Court should grant Defendants' motion and enter an order staying the case and compelling arbitration. In the alternative, and without waiving any rights with respect to arbitration, all claims against Defendants should be dismissed for failure to state a claim upon which relief can be granted, lack of subject-matter jurisdiction, or both.

## <u>ORAL ARGUMENT REQUESTED</u>

Pursuant to LR Cv 7(c), Defendants request oral argument, estimated at 90 minutes, on this motion.

Respectfully submitted,

/s/ *Rebecca F. Briggs*
Rebecca F. Briggs (#8114)
**Hinckley, Allen & Snyder LLP**
100 Westminster Street, Suite 1500
Providence, RI 02903-2319
T: (401) 274-2000
F: (401) 277-9600
rbriggs@hinckleyallen.com

Frank Pasquesi (*pro hac vice*)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
Telephone: (312) 832-4500
fpasquesi@foley.com

Michael D. Leffel (*pro hac vice*)
**FOLEY & LARDNER LLP**
150 East Gilman Street, Suite 5000
Madison, Wisconsin 53703
Telephone: (608) 258-4216
mleffel@foley.com

Gerald S. Kerska (*pro hac vice*)
David J. Wenthold (*pro hac vice* )
**FOLEY & LARDNER LLP**
777 E Wisconsin Ave
Milwaukee, Wisconsin 53202
Telephone: (414) 297-4916
gkerska@foley.com
dwenthold@foley.com

**ATTORNEYS FOR DEFENDANT
CAREMARK RX, L.L.C.**

48

                                    /s/ John A. Caletri
                                    John A. Caletri  (RI Bar # 6204)
                                    McANGUS GOUDELOCK & COURIE
                                    40 Westminster Street – Suite 201
                                    Providence, RI 02903
                                    Direct: (401) 600-2809
                                    John.Caletri@mgclaw.com

                                    **ATTORNEYS FOR DEFENDANT
                                    PRUDENTRX LLC**

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document was filed through the ECF system on March 6, 2025, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

                       */s/ Rebecca F. Briggs*
                       Rebecca F. Briggs